| | | |
|---|---|---|
| JAMES J. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-01146-TWP-TAB |
| | ) | |
| G.E.O. and R. Prus, | ) | |
| Defendants. | ) | |

**Entry on Parties' Cross Motions for Summary Judgment**

This matter is before the Court on Defendants G.E.O and R. Prus' (collectively referred to as "the Defendants") Motion for Summary Judgment. Also before the Court is Plaintiff James Johnson's ("Johnson"), cross Motion for Summary Judgment and a Motion to Freeze R. Prus Estate, dkt. [69]. Johnson, an inmate at the New Castle Correctional Facility ("NCCF"), filed this action pursuant to 42 U.S.C. § 1983, alleging that his rights were violated when he was touched inappropriately during a search and that he was retaliated against when he complained about these actions. For the following reasons, the Defendants' motion for summary judgment, dkt. [63], is **granted in part and denied in part** and Johnson's motion for summary judgment, dkt. [68], is **denied**.

## I. Standard

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Courts often confront cross motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *Kohl v. Ass'n. of Trial Lawyers of Am.,* 183 F.R.D. 475 (D. Md. 1998). Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective motions and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective nonmovant. *Matsushita,* 475 U.S. at 574.

## II. Facts

The following statement of undisputed material facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to the non-moving party with respect to the

motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

GEO Group, Inc. ("GEO") is a Florida-based company that specializes in privatized corrections and is the correctional administrator of NCCF. Johnson is an offender housed by the IDOC at NCCF. At the time of the allegations in the complaint, he worked in the kitchen. Robert Prus ("Officer Prus") is a correctional officer employed by GEO who has worked in the kitchen of the NCCF since 2011.

Officer Prus receives training each year on the proper methods of searching offenders and conducts searches of all offender employees of the kitchen before permitting them to leave the kitchen so as to thwart theft. On July 14, 2015, Officer Prus conducted a pat-down search of Johnson. Following the pat-down search, Johnson made a report that Officer Prus squeezed his testicle during the search. A formal Prison Rape Elimination Act ("PREA") investigation, coordinated by Compliance Administrator Jacob Pruis, was initiated on August 18, 2015. During the investigation, there was put in place a no-contact order between Officer Prus and Johnson. Compliance Administrator Pruis met with Johnson on a weekly basis. The investigation lasted until December 3, 2015, when it was concluded with an unsubstantiated finding. Before Johnson filed a PREA claim against Johnson, there had not been any previous PREA complaints against Officer Prus. In addition, Officer Prus had received no prior disciplinary actions taken against him for matters related to contact or interaction with offenders housed at NCCF.

On July 16, 2015, Officer Prus filed a disciplinary write up for lying to staff against Johnson. Because of this write up, Johnson lost six months of earned credit time. On July 29, 2015, before the PREA investigation began, Officer Prus sought a reclassification for Johnson

and removal from his kitchen job, for an alleged theft. The approval and reclassification to idle status was granted by persons other than Officer Prus.

## III. Discussion

Johnson and the defendants have each moved for summary judgment on Johnson's claims, including his claim that Officer Prus violated his rights in the course of the search, his claim that Officer Prus retaliated against him, and his claim that GEO maintained a policy that resulted in the violation of his rights.

A. *The Search*

Officer Prus moves for summary judgment arguing that the search did not violate Johnson's rights, while Johnson argues that Officer Prus did violate his Eighth Amendment rights during the search. "The Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004), *as amended* (June 4, 2004) (citing *Meriwether v. Faulkner,* 821 F.2d 408, 415 (7th Cir. 1987)). In the context of bodily searches, only those searches that are "maliciously motivated, unrelated to institutional security, and hence 'totally without penological justification' are considered unconstitutional." *Id.*

In support of his motion for summary judgment, Officer Prus argues that the search was a typical search conducted on all inmates and that the search was necessary to ensure that inmate kitchen employees did not steal from the kitchen. Officer Prus also points out that the PREA investigator determined that Johnson's claim was unsubstantiated.

In support of his motion for summary judgment, Johnson states that Officer Prus squeezed his testicle unnecessarily, causing him pain. Here, there is a dispute of material fact that precludes summary judgment for either party. If a reasonable jury were to believe Officer Prus, it might conclude that the search was reasonable and Johnson's rights were not violated, but if a jury were to believe Johnson, they could infer that Officer Prus performed the search in a manner designed to humiliate him rather than for a legitimate penological reason. *Cf. Jackson v. Gerl*, 622 F. Supp. 2d 738, 753 (W.D. Wis. 2009); *see also Washington v. Hively,* 695 F.3d 641 (7th Cir. 2012) (reversing grant of summary judgment for prison guard where plaintiff asserted that guard gratuitously fondled his testicles). Because there is a dispute of material fact on this issue, neither party is entitled to summary judgment.

B. *Retaliation*

The parties also move for summary judgment on Johnson's retaliation claim. Johnson claims that Officer Prus retaliated against him by getting him fired from his prison job and by writing him up on a bogus disciplinary charge for lying to staff, which resulted in the loss of six months earned credit time.

To prevail on his First Amendment retaliation claim, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *see Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013).

The parties agree that the first element of a retaliation claim – that Johnson engaged in activity protected by the First Amendment – is met here, but the parties disagree regarding whether the other two elements have been satisfied. Officer Prus argues that Johnson did not suffer a deprivation that would likely deter further First Amendment activity. This is because, according to Officer Prus, Johnson continued to submit complaints and grievances. But, while Johnson's actions may be relevant, the question is not whether *Johnson* was deterred, but whether a person of "ordinary firmness" would have been deterred. *See Bridges*, 557 F.3d at 552; *Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016) (noting that it is not obvious that the plaintiff is a person of "ordinary firmness"); *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) ("Because 'it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity,' [the plaintiff] does not have to demonstrate that his speech was 'actually inhibited or suppressed.'"). Johnson claims that he received a disciplinary sanction that resulted in the loss of six months of earned credit time as a result of Officer Prus's allegedly retaliatory actions. If this is true, a reasonable jury could conclude that Officer Prus's actions were sufficient to deter a person of "ordinary firmness" from participating in future First Amendment activity.

The parties also disagree whether the third factor is met – whether Johnson's First Amendment activity was a motivating factor in Officer Prus's actions. It appears that Johnson's retaliation claim is based on two actions by Officer Prus – a disciplinary write up for lying to staff, which resulted in the loss of six months of credit time, and a write up for theft and request for reclassification, which resulted in the loss of Johnson's job in the kitchen.

Officer Prus argues that Johnson's complaint could not have been a motivating factor because the investigation of Johnson's PREA complaint did not begin until after the Officer Prus made the request for a reclassification. He also argues that he only requested reclassification and the action on the request was actually approved by other officials at NCCF. Officer Prus presents no argument regarding the claim that he wrote Johnson up for lying to staff in retaliation for his filing of the PREA complaint. Johnson argues that he made his PREA complaint on July 14, 2015, and Officer Prus wrote him up on a conduct report for lying to staff two days later, on July 16, 2015. This write up caused him to lose six months of credit time. If Johnson is believed, then, a jury might conclude that Johnson's PREA complaint was a motivating factor in Officer Prus's decision to write him up for lying to staff.

Here, there are disputes of material fact on the second and third elements of Johnson's retaliation claim. First, as the Court has already concluded with regard to the second element, a reasonable jury could determine that Officer Prus's actions would deter a person of ordinary firmness from participating in First Amendment activity. In addition, a reasonable jury might conclude that at least Officer Prus's decision to write Johnson up for lying to staff was motivated by Johnson's First Amendment activity. On the record before the Court, a reasonable jury might also conclude otherwise. Neither party, therefore, is entitled to summary judgment on this claim.

C. *GEO Group, Inc.* (GEO)

The parties also seek summary judgment on Johnson's claim against GEO. Because GEO acts under color of state law by contracting to perform a government function, i.e., running a correctional institution, it is treated as a government entity for purposes of Section 1983 claims. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002); *but see Shields v.*

*Illinois Department of Correction*, 746 F.3d 782, 790 (7th Cir. 2014) (finding "substantial grounds to question the extension of the *Monell* holding for municipalities to private corporations"). "[M]unicipal governments [including counties] cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by their employees. They can, however, be held liable for unconstitutional municipal policies or customs." *Simpson v. Brown County,* 860 F.3d 1001, 1005-06 (7th Cir. 2017) (citing *Monell v. Dep't of Social Services,* 436 U.S. 658, 690-91 (1978)).

GEO argues that Johnson has presented no evidence that it was deliberately indifferent to a risk of harm to him. GEO does not argue specifically that it did not maintain a policy or custom that resulted in the deprivation of Johnson's Eighth Amendment rights, but it argues directly that it did not violate Johnson's rights. Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on a claim that the defendant has been deliberately indifferent to a risk of harm, a plaintiff must demonstrate two elements: (1) he was exposed to a "substantial risk to his [] health or safety;" and (2) the defendant was "deliberately indifferent to the substantial risk." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). Deliberate indifference requires that the defendant was "subjectively aware" of the risk. *Babcock v. White*, 102 F.3d 261, 270 (7th Cir. 1996) (citing *Farmer*, 511 U.S. at 834).

Here, the GEO points out that there were no prior complaints about Officer Prus before Johnson alleges that he violated his rights. In addition, the GEO trains employees regarding

proper search techniques and Officer Prus received this training. Johnson has presented no evidence to the contrary. He argues that he was not protected from Prus during the course of the investigation as GEO claims, but, even if this is true, it does not support a conclusion that GEO was aware of a risk to Johnson at the time of his injury and ignored it. Because Johnson has presented no such evidence, GEO is entitled to summary judgment on Johnson's claims and Johnson's motion for summary judgment on these claims must be **denied**.

### IV. Conclusion

As discussed above, there are genuine disputes of material fact on Johnson's claims against Officer Prus and there is no genuine issue of material fact on Johnson's claims against GEO. Consistent with this ruling, the Defendants' motion for summary judgment, dkt [63], is **granted in part and denied in part.** The motion is **denied** as to Johnson's claims against Officer Prus and **granted** as to Johnson's claims against GEO. The **clerk shall terminate** GEO as a defendant. Johnson's motion for summary judgment, dkt [68], is **denied**. This case will proceed to a resolution on Johnson's claim against Officer Prus. The motion to freeze R. Prus estate, dkt [69], is **denied** because Johnson has not demonstrated the necessity of such action at this time. The Court *sua sponte* reconsiders Johnson's motion for assistance with recruiting counsel, dkt [33]. That motion is now **granted** and the Court will endeavor to recruit counsel to represent Johnson for purposes of assisting him with settlement negotiations and trial if one is necessary. The Court will direct further proceedings in this action after counsel is recruited.

**IT IS SO ORDERED.**

Date: 3/26/2018

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES J. JOHNSON
204136
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com